HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENNIS LEE MONTGOMERY, et al. | CASE NO. C13-360 RAJ |
| Plaintiffs, | |
| v. | ORDER |
| SOMA FINANCIAL CORPORATION, et al., | |
| Defendants. | |

This matter comes before the court on a motion to dismiss by defendants Bank of America, N.A., as successor by merger to Countrywide Bank, FSB and BAC Home Loans Servicing, LP, Countrywide Home Loans, Inc., and Bank of America Corporation[1] for itself and as successor by merger to Countrywide Financial Corporation (collectively, "defendants").  Dkt. # 15 at 2 n.3.[2]  Plaintiffs' amended complaint alleges claims for violation of the Consumer Protection Act ("CPA") with respect to loan servicing, loan

---

[1] The Bank of America defendants will be referred to as "BoA."
[2] It appears to the court that any decision as to Bank of America applies equally to Countrywide Bank FSB, BAC Home Loans Servicing LP, and Countrywide Financial Corporation.  The court also notes that NV Mortgage Inc. has not appeared.

ORDER- 1

1   modification, foreclosure processing, and loan origination, violation of the False Claims

2   Act ("FCA"), violation of the Financial Institutions Reform Recovery and Enforcement

3   Act ("FIRREA"), violation of the Racketeer Corrupt and Influenced Organizations Act

4   ("RICO"), and tortious infliction of emotional distress. Dkt. # 4. Plaintiffs' amended

5   complaint is largely devoid of factual allegations specific to plaintiffs Dennis and Brenda

6   Montgomery (the "Montgomerys") or Michael Flynn, contains numerous legal

7   conclusions and conclusory allegations, and goes on at length regarding the allegedly

8   improper practices of the mortgage industry in general. Indeed, the language in the

9   complaint is remarkably similar, and, at times, largely identical, to the complaint filed in

10   *United States v. Bank of America Corp.*, Case No. 12-361-RMC in the District of

11   Columbia, Dkt. # 1. According to the complaint and documents subject to judicial

12   notice,[3] plaintiffs allege the following:

13       (1)     On September 5, 2006, the Montgomerys obtained a $2.28 million loan to

14   purchase their Yarrow Point property that was secured by a deed of trust naming Chicago

15   Title as Trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as the

---

17      [3] On a Rule 12(b)(6) motion, the court may consider documents that are referenced in the
18 complaint, form the basis of plaintiffs' claim, or are subject to judicial notice. *United States v.
*Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003); Fed. R. Evid. 201. Here, these documents include
19 the quit claim deed, the deed of trust, assignment of the deed of trust, the fact that a Summary of
Schedules was filed in the United States Bankruptcy Court, Central District of California, and the
20 fact that various entities in the mortgage industry entered into consent decrees. The factual
assertions contained in court filings are only subject to judicial notice if they are a matter of
21 public record and they are not reasonably subject to dispute. Fed. R. Evid. 201(b). Plaintiffs do
not dispute the factual assertions contained in the Summary of Schedules that was filed in the
22 public record of the Bankruptcy Court. Accordingly, the court also takes judicial notice of the
factual content contained therein. With respect to the consent decrees, defendants argue that
23 plaintiffs have failed to allege that any of the facts asserted in the consent judgment applies to
plaintiffs in this case. The court agrees. Accordingly, the court does not take judicial notice of
24 the factual assertions therein as applying to plaintiffs. Finally, the court declines to take judicial
notice of the HAMP eligibility requirements. Although plaintiffs' complaint alleges improper
25 denial of loan modification and cites to the Home Affordable Handbook, defendants have not
26 demonstrated that the HAMP eligibility requirements are the loan modification programs
referred to in plaintiffs' complaint.

1  nominal beneficiary for the lender SOMA Financial.  Dkt. # 4 (Am. Compl.) ¶ 2.1; Dkt. #
2  16-1 at 1-3 (Ex. A to McCormick Decl.).

3       (2)     The Countrywide defendants merged into BoA, and ceased to exist.  Dkt. #
4  4 (Am. Compl.) ¶¶ 2.4- 2.6.  BoA is the successor in interest to the Montgomerys' loan
5  and its current servicer.  *Id.*

6       (3)     On June 26, 2009, the Montgomerys filed a petition for bankruptcy under
7  Chapter 7.  *Id.* ¶ 2.1.  The Montgomerys' claims are limited to conduct that occurred after
8  the filing of the petition.  *Id.*

9       (4)     With respect to their claim for violation of the CPA in loan servicing,
10  Plaintiffs allege that defendants (a) failed to timely and accurately apply payments made
11  and failed to maintain accurate account statements; (b) charged excessive or improper
12  fees for default-related services; (c) failed to properly oversee third-party vendors
13  involved in servicing activities on behalf of defendants; (d) imposed force-placed
14  insurance without properly notifying the Montgomerys and when they already had
15  coverage; (e) provided the Montgomerys false or misleading information in response to
16  their complaints; and (f) failed to maintain appropriate staffing, training, and quality
17  control systems.  *Id.* ¶ 5.5.

18       (5)     With respect to plaintiffs' claim for a violation of the CPA regarding loan
19  modification, plaintiffs allege that defendants (a) represented to the Montgomerys that
20  their loan documents were lost and could not be given to them, and that those
21  representations were false; (b) presented an inapplicable loan modification program they
22  claimed would only remove interest and penalties, which was false because the
23  Montgomerys were entitled to a full reduction of all principal and interest "because of
24  systemic frauds involved in their Loan"; (c) failed to perform proper loan modification
25  underwriting based on applicable loan modification programs; (d) failed to provide
26  adequate staffing, training to staff, or processes for loan modification programs; (e)
27  allowed the Montgomerys to stay in trial modifications for excessive periods of time; (f)

1    failed to respond to inquiries from the Montgomerys; (g) provided "false or misleading

2    information" while referring their loan to foreclosure or initiating foreclosure during the

3    loan modification process; (h) represented that loss mitigation programs would provide

4    relief from foreclosure, which was a misrepresentation, and failed to provide information

5    regarding loss mitigation services, including loan modifications of full principal and

6    interest; (i) advised that the Montgomerys must be at least 60 days delinquent in loan

7    payments to qualify for a loan modification, which was false; and (j) represented that

8    loan modification applications would be handled promptly, but delayed the loan

9    modification for over three years. *Id.* ¶¶ 5.7-5.12.[4]

10         (6)     With respect to plaintiffs' claim for a violation of the CPA regarding

11   foreclosure processing, plaintiffs claim that defendants (a) failed to properly identify the

12   foreclosing party; (b) charged improper fees; (c) prepared, executed and filed various

13   "false and misleading" documents and affidavits that either lacked personal knowledge or

14   were not properly notarized with the bankruptcy court; and (d) "inappropriately dual-

15   track[ed] foreclosure and loan modification" processes. *Id.* ¶ 5.19.

16         (7)     With respect to plaintiffs' claim for violation of the CPA regarding loan

17   origination, plaintiffs claim that defendants violated their own underwriting requirements,

18   violated the Federal Housing Administration ("FHA") regulations, violated the

19   requirements of the Direct Endorsement Lenders ("DE Lenders") certifications, and

20   concealed those violations.  *Id.* ¶¶ 5.24, 5.29.

21         (8)     On February 28, 2013, the trustee of the Montgomerys' estate entered into

22   an Asset Purchase Agreement to sell the Yarrow Point property to plaintiff Flynn.  *Id.* ¶

23

24   _____

25        [4] Plaintiffs appear to allege that defendants' conduct alleged in ¶ 5.12 occurred in
     connection with the origination and servicing of the loan as well.  Dkt. # 4 (Am. Compl.) ¶ 5.13.
26   It is unclear to the court how any of these allegations apply to plaintiffs claims concerning loan
     origination where all of these allegations concern loan modification and foreclosure processing
27   allegations, which necessarily occurred after the loan originated.

2.2, Ex. 1.  Pursuant to that agreement, Flynn acquired all of the Montgomerys' interest in the Yarrow Point property together with any rights or claims for damages against the lender, servicer, and assignees that hold an encumbrance on the property.  *Id.* at 40 (Ex. 1 to Am. Compl. at 6 ¶ 14.h.)  On April 4, 2013, the trustee executed a quit claim deed that transferred title to the property to plaintiff Flynn.  Dkt. # 16-1 at 59 (Ex. D to McCormick Decl.).

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff."  *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).  However, the complaint must indicate more than mere speculation of a right to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  Additionally, the court is not required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  If the court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## A. CPA

To prevail on a CPA action, the plaintiff must prove an (1) unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) that injures plaintiff in her business or property, and (5) causation. *Klem v. Wn. Mut. Bank*, 176 Wn. 2d 771, 782, 295 P.3d 1179, 1185 (Wn. 2013) (en banc). A claim under the CPA "may be predicated on a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Id.* at 1187.

Defendants argue that plaintiffs do not allege an unfair or deceptive act or practice, an impact on public interest, or injury to business or property. Dkt. # 15 at 8-14. Plaintiffs appear to argue that the unfair or deceptive acts or practices alleged in the complaint with respect to loan servicing include "failing to apply payments properly, failing to disclosure [sic] third parties, [and] apply[ing] excessive fees."[5] Dkt. # 19 at 5; Dkt. # 4 (Am. compl.) ¶ 5.5.  Plaintiffs also argue that they have adequately plead unfair or deceptive acts with respect to loan modification by alleging that defendants made material misrepresentations that plaintiffs' loan documents were lost, provided false or misleading information while referring the loan to foreclosure, or falsely advised plaintiffs that they needed to be 60 days delinquent to qualify for loan modification.  Dkt. # 19 at 5-6; Dkt. # 4 (Am. Compl.) ¶ 5.12.  With respect to foreclosure processing, plaintiffs argue that defendants' conduct included identifying the wrong foreclosing party, robosigning, filing affidavits not conforming with applicable law, and misrepresenting the identity, office or legal status of the affiant executing the foreclosure documents, which are per se violations of the CPA.  Dkt. # 19 at 6; Dkt. # 4 (Am. Compl.) ¶ 5.19.  With respect to loan origination, plaintiffs argue that they adequately alleged that the Montgomery loan violated FHA underwriting standards, violated DE

---

[5] Plaintiffs have not alleged a failure to disclose third parties in their complaint.

Lender requirements, and that defendants used their participation as a DE Lender to conceal systemic violations and failed to comply with FHA mandated quality control requirements. *Id.*; Dkt. # 4 (Am. Compl.) ¶¶ 5.29-5.30, 5.37-5.44.

All of these allegations are identical to those alleged in the District of Columbia case. *United States v. Bank of America Corp.*, Case No. 12-361-RMC, District of Columbia, Dkt. # 1 at ¶¶ 47-89. The court cannot discern from the complaint the factual basis for these allegations and whether they are specific to the Montgomerys or Flynn, or to which defendants the allegations apply.

Accordingly, the court GRANTS defendants' motion to dismiss plaintiffs' CPA claims.

**B. False Claims Act and FIRREA**

Plaintiffs have offered no opposition to defendants' arguments that their claims for FIRREA and False Claims Act should be dismissed. Accordingly, the court grants defendants' motion to dismiss these claims. *See* Local Rule W.D. Wash. CR 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

**C. RICO**

RICO provides a private cause of action for any person injured in his business or property by reason of a violation of RICO's criminal provisions, 18 U.S.C. § 1962. 18 U.S.C. § 1964. Section 1962(c), which plaintiffs invoke here, makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962. "[R]acketeering activity" is defined to include a long list of state and federal crimes. To prove a pattern of racketeering, plaintiffs must allege at least two predicate offenses. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008).

1    Plaintiffs argue that the complaint "alleges at least two specific predicate acts

2    carried out by the enterprise through the misuse of the bankruptcy system[,] and that "the

3    scheme sought to obtain inappropriate relief and further conceal the BOA Defendants'

4    illegal conduct, as a DE Lender and underwriting, from Plaintiffs by misusing the

5    bankruptcy system." Dkt. # 19 at 12.  Based on plaintiffs' argument, it is unclear to the

6    court what they allege as the predicate acts.  Although the complaint mentions wire and

7    bankruptcy fraud (Dkt. # 4 ¶ 11.6), any allegations of fraud must be plead under the

8    heightened Rule 9(b) standard, which plaintiffs have failed to do.

9    The court finds that plaintiffs have not alleged two predicate acts.

10   **D. Tortious Inflication of Emotional Distress**

11   The tort of outrage requires (1) extreme and outrageous conduct, (2) intentional or

12   reckless inflction of emotional distress, and (3) actual result to plaintiff of severe

13   emotional distress.  *Kloepfel v. Bokor*, 149 Wn. 2d 192, 195 (2003).  The tort of outrage

14   does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or

15   other trivialities.  *Id.* at 196.

16   Plaintiffs argue that the conduct of defendants "in numerous transactions was

17   driven by nothing other than pure greed in knowing disregard of the interests of either

18   borrowers or the investors to whom the loans would be sold, in violation of numerous

19   regulations, leading to numerous lawsuits by the federal government, which conduct

20   came close to causing another great depression and caused a huge loss of equity in

21   hundreds of thousands of American homeowners was the same conduct inflicted on the

22   Montgomerys." Dkt. # 19 at 15.  As stated above, the court cannot discern from

23   plaintiffs' conclusory allegations the factual basis of plaintiffs' outrage claim, or which

24   allegations apply to the Montgomerys since the vast majority of the complaint is nearly

25   identical to the District of Columbia complaint.

26   Accordingly, the court grants defendants' motion to dismiss the outrage claim.

27

ORDER- 8

**E.  Conclusion**

For all the foregoing reasons, the court GRANTS defendants' motion to dismiss. Dkt. # 15.  The court finds that the reasoning in this order applies equally to all defendants in this matter.  Accordingly, the court DISMISSES plaintiffs' complaint in its entirety.  The court will allow plaintiffs leave to amend within 14 days of this order.  The court expects plaintiffs to allege facts sufficient to demonstrate a plausible theory of liability against each defendant named in the amended complaint, and plaintiffs should identify by name the defendants against whom each cause of action is asserted. Plaintiffs' piggy-back approach to the District of Columbia case without allegations specific to plaintiffs in this case is woefully insufficient for what this court expects to satisfy the pleading requirements.

Dated this 24th day of October, 2013.

The Honorable Richard A. Jones
United States District Judge