HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENNIS LEE MONTGOMERY, et al. | CASE NO. C13-360 RAJ |
| Plaintiffs, | |
| v. | ORDER |
| SOMA FINANCIAL CORPORATION, et al., | |
| Defendants. | |

This matter comes before the court on a motion to dismiss the second amended complaint ("SAC") by defendants Bank of America, N.A., as successor by merger to Countrywide Bank, FSB and BAC Home Loans Servicing, LP ("BAC"), Countrywide Home Loans, Inc. (the "Countrywide defendants"), and Bank of America Corporation[1] for itself and as successor by merger to Countrywide Financial Corporation (collectively, "defendants").  Dkt. # 32 at 2 n.2.[2]

---

[1] The Bank of America defendants will be referred to as "BoA."
[2] It appears to the court that any decision as to Bank of America applies equally to Countrywide Bank FSB, BAC Home Loans Servicing LP, and Countrywide Financial Corporation, unless otherwise indicated.  The court also notes that NV Mortgage Inc. has not appeared.

1    On October 24, 2013, the court dismissed plaintiffs' first amended complaint

2    because it was largely devoid of factual allegations specific to plaintiffs Dennis and

3    Brenda Montgomery (the "Montgomerys") or Michael Flynn, contained numerous legal

4    conclusions and conclusory allegations, went on at length regarding the allegedly

5    improper practices of the mortgage industry in general, and the court could not discern

6    the factual basis for plaintiffs' allegations as they were largely identical to those alleged

7    in the District of Columbia case.  *United States v. Bank of America Corp.*, Case No. 12-

8    361-RMC, District of Columbia, Dkt. # 1 at ¶¶ 47-89.  Plaintiffs' SAC alleges claims for

9    violation of the Consumer Protection Act ("CPA") with respect to loan servicing, loan

10   modification, and foreclosure processing, violation of the Racketeer Corrupt and

11   Influenced Organizations Act ("RICO"), and tortious infliction of emotional distress.

12   Dkt. # 31.  On April 29, 2014, the court ordered plaintiffs to file a redline copy of the

13   SAC against the first amended complaint.  Dkt. # 37.  The court will refer to the redline

14   copy of the SAC throughout this order.  Dkt. # 38.

15   According to the complaint and documents subject to judicial notice,[3] plaintiffs

16   allege the following:

17   (1)    On September 5, 2006, the Montgomerys obtained a $2.28 million loan to

18   purchase their Yarrow Point property that was secured by a deed of trust naming Chicago

19   Title as Trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as the

20   nominal beneficiary for the lender SOMA Financial.  Dkt. # 38 (SAC) ¶ 2.1; Dkt. # 16-1

21   at 1-3 (Ex. A to McCormick Decl.).

22   (2)    The Countrywide defendants merged into BoA, and ceased to exist.  Dkt. #

23   38 (SAC) ¶¶ 2.4-2.6.  BoA is the successor in interest to the Montgomerys' loan and its

24   current servicer.  *Id.*

---

26
27   [3] The court incorporates by reference its analysis regarding the documents subject to
     judicial notice in the court's October 24, 2013 order.  Dkt. # 30 at 2 n.3.

ORDER- 2

(3)     On June 26, 2009, the Montgomerys filed a petition for bankruptcy under Chapter 7. *Id.* ¶ 2.1.  The Montgomerys' claims are limited to conduct that occurred after the filing of the petition.  *Id.*

(4)     With respect to their claim for violation of the CPA in loan servicing, Plaintiffs allege that BoA (a) failed to timely and accurately apply at least two mortgage payments made by the Montgomerys to Countrywide after BoA purchased Countrywide and took over operations; (b) charged excessive or improper fees for default-related services; (c) failed to properly oversee third-party vendors involved in servicing activities on behalf of defendants; (d) imposed force-placed insurance in the amount of $5,000 in annual premiums without properly notifying the Montgomerys and when they already had coverage of $1,700 in annual premiums, thereby unnecessarily increasing amounts due under the loan in terms of additional fees, charges, interest, and principal; and (e) provided the Montgomerys false or misleading information in response to their complaints. *Id.* ¶ 5.5a-e.  With respect to the failure to timely and accurately apply mortgage payments, plaintiffs clarify, that it was BAC, as BoA's agent, that failed to timely and accurately apply mortgage payments and failed to maintain accurate account statements that resulted in account statements being in excess of what the Montgomerys actually owed. *Id.* ¶ 5.5a.  The Montgomerys made at least two monthly mortgage payments totaling $34,000, but BoA never applied these payments to its account balance, which resulted in BoA charging excessive late fees and interests.  *Id.* The failure to apply these payments also resulted in the account balances showing that the Montgomerys were in default when they were not.  *Id.*  In BAC's motion for relief filed in the Montgomerys bankruptcy case, BAC represented that the Montgomerys had missed three mortgage payments totaling $44,000 prior to filing for bankruptcy, when in fact they were not in default on the loan at all.  *Id.*  With respect to providing false or misleading information, plaintiffs allege that BoA represented that it would impose forced-place insurance that provided the same insurance they already had, which was false because the force-placed

1   insurance did not cover liability and accident risks, but only casualty losses to the

2   property itself. *Id.* ¶ 5.5e. The Montgomerys allege that they were harmed by this

3   representation because they incurred $40,000 liability as a result of an accident to a non-

4   resident in 2012, and the insurance company that issued the force-placed insurance

5   denied the claim due to lack of coverage. *Id.* Had BoA not made the representation that

6   the force-placed insurance was the same as the coverage they were already paying for,

7   they would have purchased their own liability insurance. *Id.*

8         (5)    With respect to plaintiffs' claim for a violation of the CPA regarding loan

9   modification, plaintiffs allege that defendants (a) represented to the Montgomerys from

10   2008 through 2013 that their loan documents were lost, that no one was sure who had

11   authority to modify the loan or whether the loan qualified for modification, and that those

12   representations were false because the loan documents were electronically stored in

13   BoA's computers and available in late 2012; (b) represented that the Montgomerys

14   qualified for loan modification and would be approved for loan modification, for which

15   the Montgomerys had applied and provided all documents to prove eligibility, and that

16   the pending modification would cure any default and reduce the principal and interest

17   owed by them, and that those representations were false and caused the Montgomerys to

18   incur debt and interest charges in excess of what they were entitled to under the

19   modification programs; (c) encouraged and induced the Montgomerys to default on their

20   loan in 2008 because they would only be eligible for loan modification if they defaulted

21   on the loan. *Id.* ¶ 5.7a-c. Plaintiffs also allege that BoA (a) presented an inapplicable

22   loan modification program they claimed would only remove interest and penalties, which

23   was false because the Montgomerys were entitled to a full reduction of all principal and

24   interest "because of systemic frauds involved in their Loan"; (b) failed to provide

25   adequate staffing, training to staff, or processes for loan modification programs; (c) failed

26   to respond to inquiries from the Montgomerys; (d) provided "false or misleading

27   information" while referring their loan to foreclosure, initiating foreclosure during the

loan modification process, or scheduling and conducting proceedings in bankruptcy; (e)
represented that loss mitigation programs would provide relief from foreclosure, which
was a misrepresentation, and failed to provide information regarding loss mitigation
services, including loan modifications of full principal and interest; (f) advised that the
Montgomerys must be at least 60 days delinquent in loan payments to qualify for a loan
modification, which was false; and (g) represented that loan modification applications
would be handled promptly, but delayed the loan modification for over three years. *Id.*
¶¶ 5.12a-s.[4]

(6)    With respect to plaintiffs' claim for a violation of the CPA regarding
foreclosure processing, plaintiffs claim that defendants (a) attempted to foreclose on the
deed of trust after inducing the Montgomerys to default on their loan; (b) prepared,
executed, filed or presented false, perjured, and misleading documents as part of its
motion to lift the stay in the bankruptcy case; and (c) dual-tracked foreclosure and loan
modification activities, and failed to communicate with the Montgomerys regarding
foreclosure activities. *Id.* ¶ 5.19.

(7)    On February 28, 2013, the trustee of the Montgomerys' estate entered into
an Asset Purchase Agreement to sell the Yarrow Point property to plaintiff Flynn. *Id.* ¶
2.2; Dkt. # 31 at 40 (Ex. 1 to SAC).  Pursuant to that agreement, Flynn acquired all of the
Montgomerys' interest in the Yarrow Point property together with any rights or claims
for damages against the lender, servicer, and assignees that hold an encumbrance on the
property.  Dkt. # 31 at 40 (Ex. 1 to SAC at 6 ¶ 14.h).  On April 4, 2013, the trustee
executed a quit claim deed that transferred title to the property to plaintiff Flynn.  Dkt. #
16-1 at 59 (Ex. D to McCormick Decl.).

When considering a motion to dismiss for failure to state a claim under Federal
Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations

---

[4] Allegations in paragraph 5.12 are largely unchanged from the prior amended complaint.

1   as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler*

2   *Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).

3   However, the complaint must indicate more than mere speculation of a right to relief.

4   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]or a complaint to survive a

5   motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

6   that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

7   *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Threadbare recitals of

8   the elements of a cause of action, supported by mere conclusory statements, do not

9   suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Additionally, the

10  court is not required to accept as true conclusory allegations that are contradicted by

11  documents referred to in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

12  1295 (9th Cir. 1998). Dismissal can be based on the lack of a cognizable legal theory or

13  the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

14  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). If the court dismisses the

15  complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v.*

16  *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

17  **A. Article III Standing**

18          To have standing under Article III, a plaintiff must demonstrate that (1) he has

19  suffered an actual or threatened injury in fact; (2) the injury is causally connected to the

20  conduct complained of; and (3) it is likely, and not merely speculative, that his injury will

21  be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

22  (1992). The requisite injury-in-fact pursuant to Article III must be actual or threatened,

23  and not merely speculative. *See id.* "In essence the question of standing is whether the

24  litigant is entitled to have the court decide the merits of the dispute or of particular

25  issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing "often turns on the nature

26  and source of the claim asserted. The actual or threatened injury required by Art. III may

27

1    exist solely by virtue of statutes creating legal rights, the invasion of which creates

2    standing." *Id.* at 500 (internal quotations omitted).

3         Defendants argue that plaintiffs entire suit fails for lack of Article III standing

4    because plaintiffs do not plausibly allege an injury in fact that is traceable to conduct

5    complained of where (1) borrowers are not entitled to loan modification, (2) there was no

6    foreclosure, and (3) there are no allegations that link Mr. Montgomery's brain aneurism

7    to BoA's promises of loan modification over the years alleged.  Dkt. # 32 at 8-9.[5]

8         However, plaintiffs have alleged that BoA failed to timely and accurately apply at

9    least two mortgage payments totaling $34,000, which resulted in BoA charging excessive

10   late fees and interest and resulted in account balances showing that the Montgomerys

11   were in default when they were not.  Dkt. # 38 ¶ 5.5a.  Plaintiffs also allege that BoA

12   represented to them that they qualified for loan modification, would be approved, and the

13   modification would cure any default and reduce the principal and interest owed by them.

14   *Id.*  ¶ 5.7b.  Plaintiffs allege that such representations were false and caused the

15   Montgomerys to incur debt and interest charges far in excess of what they would have

16   received under modification.  *Id.*  Plaintiffs also allege that BoA encouraged and induced

17   them to default because BoA represented that it was the only way to obtain loan

18   modification. *Id.* ¶ 5.7c.  Finally, plaintiffs allege that BoA imposed force-placed

19   insurance in the amount of $5,000 in annual premiums without properly notifying them

20   when they already had coverage of $1,700 in annual premiums, which caused an increase

21   in the amounts due under the loan in fees, charges, interest, and principal. *Id.* ¶ 5.5d-e.

22

23

24        [5] In reply, defendants also argue that the Montgomerys lack standing because their legal
25   claims were sold to Michael Flynn.  Dkt. # 36 at 5.  However, plaintiffs have not had an
     opportunity to respond to this argument since it was raised for the first time in reply.
26   Accordingly, the court has disregarded this argument.  The court notes that defendants do not
     appear to argue that Mr. Flynn lacks standing to pursue these claims based on the asset purchase
27   agreement.

1   These factual allegations are sufficient, at this stage of the proceedings, to

2   demonstrate that plaintiffs suffered an actual injury in fact and that the injuries were

3   causally connected to BoA's conduct.  The court addresses whether these allegations

4   plausibly allege a cause of action below.

5   **B. CPA**

6   To state a CPA claim, the plaintiff must allege an (1) unfair or deceptive act or

7   practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) that

8   injures plaintiff in her business or property, and (5) causation.  *Klem v. Wn. Mut. Bank*,

9   176 Wn. 2d 771, 782, 295 P.3d 1179, 1185 (Wn. 2013).  A claim under the CPA "may be

10  predicated on a per se violation of statute, an act or practice that has the capacity to

11  deceive substantial portions of the public, or an unfair or deceptive act or practice not

12  regulated by statute but in violation of public interest."  *Id.* at 1187.  "To prove that an act

13  or practice is deceptive, neither intent nor actual deception is required.  The question is

14  whether the conduct has the capacity to deceive a substantial portion of the public."  *Bain*

15  *v. Metro. Mortg. Group, Inc.*, 175 Wn. 2d 83, 115, 285 P.3d 34 (Wn. 2012) (internal

16  quotations and emphasis omitted).  Even accurate information may be deceptive if there

17  is a representation, omission or practice that is likely to mislead.  *Id.*  "Misrepresentation

18  of material terms of a transaction or the failure to disclose material terms violates the

19  CPA."  *Id.* at 116.  Whether particular actions are deceptive is a question of law.  *Id.*

20  Plaintiffs have alleged several deceptive acts with respect to loan servicing and

21  loan modification.  Plaintiffs allege that BoA charged the Montgomerys excessive or

22  improper fees and interest after failing to apply at least two monthly mortgage payments.

23  Dkt. # 38 ¶ 5.5a.  Plaintiffs also allege that BoA excessively charged the Montgomerys

24  for the force-placed insurance without properly notifying the Montgomerys, and falsely

25  represented that the more expensive force-placed insurance was the same type of

26  coverage as the coverage carried by the Montgomerys.  *Id.* ¶ 5.5d-e.  Plaintiffs also allege

27

1    that BoA repeatedly and falsely informed the Montgomerys that their loan documents

2    were lost and that nobody was sure who had authority to modify the loan, resulting in

3    excessive interest because the loan could not be modified.  *Id.* ¶ 5.7a.  Plaintiffs also

4    allege that BoA falsely represented that the loan modification would be approved and

5    would cure any default and reduce the principal and interest owed.  *Id.* ¶ 5.7b.  Finally,

6    plaintiffs allege that BoA encouraged and induced default because BoA informed the

7    Montgomerys that they would only be eligible for loan modification if they defaulted on

8    their loan.  *Id.* ¶ 5.7c.

9         With respect to injury, plaintiffs argue that they adequately allege investigative

10   expenses,[6] excessive fees and interest and imposition of force-placed insurance.  Dkt. #

11   35 at 5-6 (citing to ¶¶ 5.5b & d-e, & 6.3).  Each of these alleged injuries relates only to

12   the loan servicing allegations, not loan modification.  Plaintiffs also argue that the

13   Montgomerys were injured by BoA keeping them ignorant of their legal protections, but

14   have failed to direct the court to any allegations in the complaint that plausibly allege an

15   injury under the dicta in *Bain*.  *Id.* at 6; 174 Wn. 2d at 118 ("But there are many different

16   scenarios, such as when homeowners need to deal with the holder of the note to resolve

17   disputes or to take advantage of legal protections, where the homeowner does need to

18   know more and can be injured by ignorance.  Further, if there have been

19   misrepresentations, fraud, or irregularities in the proceedings, and if the homeowner

20   borrower cannot locate the party accountable and with authority to correct the

21   irregularity, there certainly could be injury under the CPA.").

22

23

24   _____

25        [6] Plaintiffs cite ¶¶ 6.3 and 7.3 in arguing that they have adequately alleged investigative
     expenses.  The only allegation in those paragraphs referencing investigative expenses is the
26   conclusory allegation that the Montgomerys "have had to incur substantial expenses in the
     investigations and attempts to obtain remedies" for BoA's unlawful conduct.  Such a conclusory
27   allegation is insufficient to plausibly allege injury caused by BoA's deceptive acts.

1    The court finds that plaintiffs have adequately alleged injury and a causal

2    connection with respect to (1) the excessive fees and interest charged after failing to

3    apply at least two monthly mortgage payments, and (2) excessive charges for the force-

4    placed insurance without proper notice.  However, plaintiffs have not plausibly alleged an

5    injury flowing from BoA's alleged misconduct involving loan modification or loss

6    mitigation relief.  Plaintiffs have not plausibly alleged an obligation by BoA to modify

7    plaintiffs' loan, or provided legal authority that would require BoA to modify plaintiffs'

8    loan on terms that were acceptable to plaintiffs.[7]  While BoA may have had an obligation

9    to be honest with plaintiffs about the loan modification and foreclosure process and not

10   make false promises (neither of which have been pled), plaintiffs have not plausibly

11   alleged an injury resulting from these alleged misrepresentations.

12        With respect to public interest, "it is the likelihood that additional plaintiffs have

13   been or will be injured in exactly the same fashion that changes a factual pattern from a

14   private dispute to one that affects the public interest."  *Hangman Ridge Training Stables,*

15   *Inc. v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 790, 719 P.2d 531 (Wn. 1986).  Factors

16   indicating public interest in essentially a private dispute include whether the alleged acts

17   were committed in the course of defendant's business, whether defendant advertised to

18   the public in general, whether defendants actively solicited this particular plaintiff,

19   indicating potential solicitation of others, and whether plaintiff and defendant occupy

20   unequal bargaining positions.  *Id.* at 790-91.  Plaintiffs have alleged that BoA's conduct

21   and practices in connection with the Montgomerys' loan is typical and similar to its

22   practices as alleged in a Consent Judgment entered into by defendants in another case,

23   which indicates the  likelihood that others are affected by the same or similar conduct.

24   Dkt. # 38 ¶¶ 1.1, 5.1-5.4, 5.5.  Plaintiffs' allegations are also sufficient to demonstrate

25

26        [7] *See Badgett v. Security State Bank*, 116 Wn. 2d 563, 571-72, 574, 807 P.2d 356 (Wn.
     1991) (implied duty of good faith in every contract does not give rise to a duty on the part of the
27   bank to consider borrower's efforts to restructure the loan agreement).

ORDER- 10

that BoA's conduct was committed in the course of its business. *Id.* ¶ 5.2. Although close, the court believes that these allegations are sufficient to plausibly allege the public interest factor to survive a Rule 12(b)(6) motion.

With respect to the foreclosure processing, plaintiffs allege the following deceptive acts: (1) BoA attempted to foreclose on the deed of trust after inducing the Montgomerys to default, and (2) BoA dual-tracked foreclosure and loan modification by failing to communicate with the Montgomerys regarding foreclosure activities and misleading them about loan modification approval.[8] Dkt. # 38 ¶¶ 5.13, 5.19a-c. With respect to injury plaintiffs argue that they adequately alleged investigative expenses, excessive interest, improper fees and charges, and expenses to obtain loss mitigation relief. Dkt. # 35 at 7 (citing ¶ 7.3). The court's findings above with respect to the alleged injury of investigative expenses and expenses to obtain loss mitigation relief apply equally here. Additionally, plaintiffs have failed to plausibly allege how the excessive interest, improper fees and charges flowed directly from the foreclosure process, as opposed to the loan servicing.[9]

Accordingly, the court finds that plaintiffs have failed to state a CPA claim based on foreclosure processing, loan modification and loss mitigation relief.

---

[8] Plaintiffs also allege that BoA filed a "robosigned" declaration in Bankruptcy court that contained false statements. Bankruptcy and non-judicial foreclosure are legally distinct proceedings and processes. Accordingly, the court finds that any conduct complained of in bankruptcy proceedings cannot form the factual basis for plaintiff's CPA claim based on non-judicial foreclosure processing. At this stage, it appears to the court that plaintiffs are complaining of an attempted non-judicial foreclosure process. To the extent that plaintiffs are complaining about a judicial foreclosure, they should make that clear in any future filings, and provide relevant legal authority regarding judicial foreclosures as a basis for a CPA claim.

[9] Defendants argue that there can be no injury where there was no foreclosure. However, plaintiffs do not allege that the foreclosure is the injury. The court is not aware of any legal authority that prohibits a CPA claim that alleges deceptive conduct in the foreclosure process that results in injuries in the form of improper or excessive fees and interest, even if it ultimately results in no foreclosure. It may well be that BoA never initiated a foreclosure process, but the court is bound by the allegations of the complaint and documents subject to judicial notice at this stage of the proceedings.

## C. RICO

Defendants argue that plaintiffs have not sufficiently alleged at least two predicate acts.  Dkt. # 32 at 14-17.[10]  Plaintiffs argue that it has sufficiently alleged bankruptcy fraud and at least fifteen separate occasions of wire fraud.  Dkt. # 35 at 8 (citing ¶¶ 5.13 & 8.4 for bankruptcy fraud and ¶¶ 5.7a-c, 5.12i-l, s, 5.13, 8.4 for wire fraud).

RICO provides a private cause of action for any person injured in his business or property by reason of a violation of RICO's criminal provisions, 18 U.S.C. § 1962.  18 U.S.C. § 1964.  Section 1962(c), which plaintiffs invoke here, makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962.  "[R]acketeering activity" is defined to include a long list of state and federal crimes.  To prove a pattern of racketeering, plaintiffs must allege at least two predicate offenses.  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008).

Civil RICO fraud claims are subject to Rule 9(b)'s heightened pleading standard.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986).  Rule 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.  *Schreiber*, 806 F.2d at 1401.  A wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud.  *Id.* at 400. The only aspects of wire fraud that

---

[10] Defendants are mistaken with respect to their stare decisis and law of the case arguments.  Plaintiffs are not seeking reexamination of whether the order lifting the stay in bankruptcy was proper.  Nor have defendants directed the court to any order that specifically decided the issue of whether BoA submitted false statements in a declaration to the Bankruptcy court.

1    require particularized allegations are the factual circumstances of the fraud itself. *Odom*

2    *v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007). Additionally, materiality is an

3    element of wire fraud. *Neder v. United States*, 527 U.S. 1, 24 (1999). A statement is

4    material for wire fraud purposes only if it has the natural tendency to influence or be

5    capable of influencing the person to whom it is addressed. *United States v. Jenkins*, 633

6    F.3d 788, 802 n.3 (9th Cir. 2011).

7          Neither party has provided sufficient briefing regarding whether plaintiffs'

8    allegations of bankruptcy or wire fraud are adequately pled. Indeed, neither party

9    provided the court with the relevant substantive legal authority cited above, or any

10   analysis regarding the specific allegations in the SAC. Defendants have provided general

11   arguments without referring to specific allegations in the complaint,[11] and raise some

12   arguments for the first time in reply. Plaintiffs fail to cite binding Ninth Circuit authority

13   regarding the applicable pleading standard, and their general arguments also fail to

14   provide specific analysis or substantive legal authority. The court will not undertake

15   counsel's tasks, and declines to address the parties' legally and factually inadequate

16   arguments regarding bankruptcy and wire fraud at this time.[12]

17   **D. Tortious Infliction of Emotional Distress**

18         Plaintiffs allege claims for both intentional and negligent infliction of emotional

19   distress. Dkt. # 38 ¶¶ 9.1-9.3. Defendants have only provided analysis regarding

20   intentional infliction of emotional distress, and only argue that plaintiffs fail to allege

21   extreme or outrageous conduct. Dkt. # 32 at 17-19. Plaintiffs argue that the "SAC

22

23   —————————————

24         [11] Defendants should read the complaint as a whole where plaintiffs incorporate all prior
     allegations and certain allegations are provided in more detail in prior allegations, rather than
25   rely solely on one paragraph. Dkt. # 32 at 17 (citing only ¶ 8.4).
           [12] The court notes, however, that a general allegation that summarizes the purported
26   representations falls short of Rule 9(b)'s requirement that the pleader state the time, place, and
     specific content of the false representations as well as the identities of the parties to the
27   misrepresentations.

1    alleged numerous misrepresentations and falsities by BOA that violated numerous laws

2    and regulations[, and the] level of deception and callousness of BOA towards the

3    Montgomerys was . . . outrageous and beyond all possible bounds of decency." Dkt. # 35

4    at 9.

5          The tort of outrage requires (1) extreme and outrageous conduct, (2) intentional or

6    reckless infliction of emotional distress, and (3) actual result to plaintiff of severe

7    emotional distress. *Kloepfel v. Bokor*, 149 Wn. 2d 192, 195 (2003).  The tort of outrage

8    does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or

9    other trivialities. *Id.* at 196.

10         Plaintiffs' allegations supporting their claim for outrage are the same as those

11   underlying their CPA claims, including promises of loan modification, false

12   representations that the loan documents were lost, failing to apply two mortgage

13   payments, inducing the Montgomerys to default in order to qualify for loan modification

14   and then once in default, attempting to foreclose on the property, and using a perjured

15   declaration in an attempt to foreclose[13] on the deed of trust.  Dkt. # 38 ¶ 9.3.  Of these

16   allegations, the allegation that BoA induced the Montgomerys to default and then

17   attempted to foreclose on the property plausibly alleges extreme or outrageous conduct.

18   **E.  Conclusion**

19         For all the foregoing reasons, the court GRANTS in part and DENIES in part

20   defendants' motion to dismiss.  Plaintiffs have not requested the opportunity to amend

21   their complaint.  If they believe they can cure any of the defects identified by the court,

22   they must file a motion to amend the complaint within 14 days of this order pursuant to

23   the Federal Rules of Civil Procedure and Local Civil Rules.  Any amended complaint

24

25   _____

26         [13] It appears that the alleged perjured declaration is the same as the Bolanos declaration
     signed on April 7, 2010 that was filed in Bankruptcy court.  The sale of the property by the
27   bankruptcy trustee is not a non-judicial foreclosure or part of a non-judicial foreclosure process.

1 | shall not exceed thirty pages.  To the extent that plaintiffs file a third amended complaint,
2 | the court directs plaintiffs to eliminate allegations not relevant to the remaining causes of
3 | action and to provide the court a redline copy of the third amended complaint against the
4 | second amended complaint.
5 |       Dated this 19th day of May, 2014.
6 |
7 |
8 | The Honorable Richard A. Jones
9 | United States District Judge
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |