HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| MICHAEL J. FLYNN; and DENNIS LEE MONTGOMERY and BRENDA KATHLEEN MONTGOMERY, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>NV MORTGAGE INC. d/b/a Soma Financial d/b/a www.mysoma.com; COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE BANK, FSB; BANK OF AMERICA, N.A., successor to the COUNTRYWIDE DEFENDANTS; BAC HOME LOANS SERVICING, LP, successor to the COUNTRYWIDE DEFENDANTS, LP; BANK OF AMERICA CORPORATION, successor to the COUNTRYWIDE DEFENDANTS; and DOES 1-50,<br><br>Defendants. | Case No.  2:13-cv-00360-RAJ<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR EVIDENTIARY SANCTIONS**<br><br>**NOTED FOR HEARING: NOVEMBER 28, 2014** |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR EVIDENTIARY SANCTIONS- 0
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

## I.     INTRODUCTION

In their Motion to Compel Initial Disclosures and For Evidentiary Sanctions ("Motion"), Plaintiffs Michael J. Flynn ("Flynn") and Dennis and Brenda Montgomery (the "Montgomerys") (collectively, "Plaintiffs") seek to compel initial disclosures despite the fact that Defendants Bank of America, N.A., and Bank of America Corporation (collectively "Defendants") have not only complied with the Federal Rules by providing such initial disclosures, but have also supplemented their disclosures on two subsequent occasions in an attempt to assuage Plaintiffs and avoid an unnecessary motion.  Defendants' disclosures comply with the Federal Rules and are not deficient. Yet, Plaintiffs file the instant Motion under the mistaken belief that the purpose of Defendants' initial disclosures is to alleviate their need to engage in any discovery to prosecute their claims.

First, Plaintiffs argue that Defendants should have disclosed the existence of litigation concerning implementation of modifications under the Making Homes Affordable Program (HAMP), a program for which Plaintiffs would never qualify and thus has no relevance whatsoever to the instant suit. Specifically, the property in question is valued at more than three times the limit for residences which are potentially eligible for HAMP modifications.

Second, Plaintiffs believe that Defendants have inadequately disclosed the identity of persons who may have knowledge concerning these claims and who may ultimately testify at trial.  The Federal Rules only require Defendants to disclose the identity of witnesses who *Defendants* (not Plaintiffs) intend to call to testify, which they have done here. Insofar as Plaintiffs require additional information regarding employees who may have worked on the subject loan, they have been and remain free to engage in such discovery, and regardless, this information has already been provided to Plaintiffs. In addition, Plaintiffs waited over a year to challenge the sufficiency of such disclosures, thereby demonstrating their lack of diligence and establishing the absence of any prejudice. In fact, the Rule 16 conference was held just a couple months ago such that Plaintiffs could not have been prejudiced even if such disclosure

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 1
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

was required, as the parties were unable to engage in any discovery prior to the entry of a Joint Status Report.

It is readily apparent that Plaintiffs' Motion is designed solely to harass and burden Defendants, and not to remedy any actual prejudice, as discovery is not set to close in this matter for another ten months. As Defendants' disclosures were appropriate under the Federal Rules, Plaintiffs' Motion should be denied, and their wildly excessive request for sanctions must also be denied.

## II.     PROCEDURAL HISTORY

The Montgomerys initiated the instant lawsuit on February 27, 2013. Dkt. 1. Defendants provided their initial disclosures to the Montgomerys on May 15, 2013. Dkt. 50-1. Despite the fact that Plaintiffs now express outrage regarding such disclosures, they failed to comment on them for a year after receipt of same. After the parties conferred on a Joint Status Report, which was filed on June 17, 2014, Plaintiffs stated for the first time in the Report that Defendants' initial disclosures were somehow inadequate, without providing any detail for such contention. Dkt. 43. Subsequently, on June 26, 2014, Plaintiffs filed a Notice of Pendency of Other Action, referring to an MDL action relating to HAMP modifications venued in Massachusetts, which Plaintiffs claim should have been disclosed to them by Defendants. Dkt. 44.

On July 16, 2014, Flynn[1] reached out to schedule a meet and confer. Declaration of Jacob Downs ("Downs Decl.") ¶ 2. Ultimately, a meet and confer was held on July 18, 2014, wherein Flynn argued that Defendants had failed to meet their Rule 26 obligations because they had not provided copies of documents or identify the documents by category and location. *Id.* ¶ 3. Flynn further argued that Defendants are under an obligation to identify each database where the documents identified in the disclosures reside. *Id.* Defendants

---

[1] Mr. Flynn, who is an attorney licensed in Massachusetts but not in Washington State, has now appeared *pro se* in this matter.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 2
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

agreed to provide supplemental disclosures, which were served on Plaintiffs on July 21, 2014. *Id.* ¶ 4; Dkt 50-2.

Flynn still was not satisfied with the supplemental disclosures, and he apparently chose to switch grounds for contesting the disclosures on July 21, 2014, by arguing that he believed Defendants were required to identify BANA employees who may ultimately be called to testify, and also by demanding that Defendants supplement by identifying the databases and location of categories of documents maintained by Defendants. Downs Decl. ¶ 4, Ex. A (7/21/14 e-mail chain). Defendants responded by clarifying that they had already disclosed who they intended to call – a records custodian - and that they reserved the right to call employees who worked on the Montgomerys' account. *Id.* Flynn responded that Plaintiffs believed they had been prejudiced by the failure to disclose this information and intended to file a motion to compel, despite the fact that the disclosures had been made a year earlier, and discovery had just opened. *Id.* Defendants' counsel reiterated that Defendants had complied with the requirements of Federal Rule 26, as they had disclosed the identity of persons ***Defendants*** may choose to call as witnesses and were not required to do Plaintiffs' work for them by disclosing the identify of all parties who worked on the account. Instead, Plaintiffs were and remain free to engage in discovery to seek such information if they are so inclined. *Id.* Notwithstanding this, Defendants' counsel agreed to another meet and confer conference with Flynn on July 28, 2014. *Id.* ¶ 5.

The parties conferred on July 28, 2014, and Defendants' counsel followed up with an e-mail dated July 29, 2014 summarizing Defendants' position regarding the fact that their disclosures were adequate under Federal Rule 26. *Id.* ¶ 6, Ex. B (7/28/14 e-mail chain). Defendants also offered to provide another supplemental disclosure to Plaintiffs in an attempt to avoid unnecessary motion practice. *Id.* To that end, Defendants provided a second supplemental disclosure as well as Defendants' responses to Plaintiffs' Request for

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 3
Case #2:13-cv-00360-RAJ

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Production of Documents on August 4, 2014. *Id.* ¶ 7; Dkt. Nos. 50-6, 50-7. Plaintiffs responded by filing the instant Motion on August 20, 2014. Dkt. 50.

### III.   LEGAL ARGUMENT

**A.   Defendants Have Complied with Federal Rule 26(a) and Regardless, Plaintiffs Have Suffered No Prejudice.**

Contrary to Plaintiffs' assertions, Defendants' initial disclosure and two supplemental disclosures fully comply with Federal Rule 26. Federal Rule 26(a) simply requires that the parties disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information…that the ***disclosing party*** may use to support its claims or defenses." *See* FRCP 26 (emph. added). In their disclosures, Defendants indicated that they may potentially call a custodian of records, and reserve the right to call employees who may have worked on the Montgomerys' loan. Moreover, Defendants subsequently provided Plaintiffs with a copy of their loan file in response to discovery, which contained the identity of various persons who worked on the subject loan. Regardless, Federal Rule 26 does not require that Defendants list every employee that has ever participated in the servicing of Plaintiffs' loan, much less purported "whistleblowers."

In this regard, the advisory committee notes to the 2000 amendments to FRCP 26(a)(1) are particularly instructive.

> *Purposes of amendments.* The Rule 26(a)(1) initial disclosure provisions are amended to establish a nationally uniform practice. The scope of the disclosure obligation is narrowed to cover only information that the disclosing party may use to support its position. In addition, the rule exempts specified categories of proceedings from initial disclosure, and permits a party who contends that disclosure is not appropriate in the circumstances of the case to present its objections to the court, which must then determine whether disclosure should be made. Related changes are made in Rules 26(d) and (f).
>
> …
>
> The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses. "Use" includes any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 4
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

> use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if—in the language of Rule 26(a)(3)—"the need arises."
>
> A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use. The obligation to disclose information the party may use connects directly to the exclusion sanction of Rule 37(c)(1). Because the disclosure obligation is limited to material that the party may use, it is no longer tied to particularized allegations in the pleadings. Subdivision (e)(1), which is unchanged, requires supplementation if information later acquired would have been subject to the disclosure requirement. As case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use.

*See also Matson v. United Parcel Service, Inc.*, 872 F. Supp. 2d 1131 (W.D. Wash. 2012) (this Court explained that under Federal Rule 26 requires identification of witnesses the party intends to call).  Hence, under Federal Rule 26, a disclosing party is required to disclose only information that it may use to support ***its own position.***  A party is not required to do the opposing parties' work for it by disclosing witnesses the party does not intend to use.

In addition to contradicting the plain language of the rule, Plaintiffs' position is inapposite to Ninth Circuit case law. *See West v. Cavalry Portfolio Services, LLC*, 2014 WL 1744329 (W.D.Wash. 2014) (in addressing motion for summary judgment where party sought to exclude evidence because witness was not identified in initial disclosures, Court explained that witness was not identified by name but was identified as a "representative" of Defendant, and because Plaintiff could not identify any prejudice he suffered as a result of the failure to name the witness by name, any deficiency was harmless and no sanctions were appropriate); *Sweeney v. Manorcare Health Services, Inc.*, Case No. C03-5320RJB, 2006 WL 1042015 (W.D. Wash. 2006) (after plaintiff provided an initial disclosure identifying witnesses and later supplemented to add more potential witnesses without providing full addresses and a vague description of their anticipated testimony, the court concluded that motion to strike

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 5
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

witnesses and to limit testimony was premature where plaintiff had disclosed all the information presently known to her and she agreed to stipulate to additional depositions).

Moreover, a party seeking to challenge the sufficiency of disclosures is under a duty to be diligent in doing so.  In *Theoharis v. Rongen*, Case No. C13-1345RAJ, 2014 BL 199478[2] (W.D. Wash. 2014), this Court, in addressing several discovery motions, explained:

> Counsel was now suffering the consequences of having neglected this case for nearly six months. The court need not belabor the standards that apply to changing court deadlines, continuing trial deadlines, and otherwise upsetting a case schedule that has been in place for more than seven months. It suffices to say that to prevail on any such request, a party must begin by demonstrating its diligence in pursuing its case or defense. Ofc. Rongen's counsel cannot demonstrate diligence.  Waiting until late April to begin discussing discovery in a case with a July 21 discovery deadline is not diligence, it is a cautionary tale to any lawyer hoping to conduct litigation diligently.

*Id.* At *3. Here, Defendants met their obligations by identifying a records custodian and reserving the right to call persons who may have worked on Plaintiffs' file.  Defendants were not required to identify every person who worked on Plaintiffs' file if Defendants do not intend to call them to testify. Nor were Defendants required to provide Plaintiffs with notice of every pending lawsuit in which they are involved.  Defendants provided notice as to who they might potentially call as witnesses, a records custodian, and persons who may have had some involvement with Plaintiffs' file (as identified in their loan file).  This information was disclosed to Plaintiffs, and if they found same defective, they had the option to challenge the sufficiency of such disclosures or to engage in discovery seek additional information regarding such potential witnesses.  Instead Plaintiffs waited a year to challenge the disclosures, defying the diligence required by the *Theoharis* court.

Further, discovery in this matter is not scheduled to close until September 14, 2015 and trial is not scheduled for January 11, 2016. See Dkt. 45.  Thus, not only have Plaintiffs managed to establish that Defendants' disclosures were inadequate, but they have not and

---

[2] A copy of the opinion is attached to the Downs Declaration as Exhibit C.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR EVIDENTIARY SANCTIONS- 6
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

certainly cannot demonstrate that they have suffered any prejudice as a result any purported (and denied) deficiency.

In short, Plaintiffs are free to advance their case as they see fit, and Defendants' initial disclosures have in no way prevented Plaintiffs from engaging in discovery. Here, Defendants' disclosures were proper under Federal Rule 26, and Plaintiffs' arguments to the contrary amount to nothing more than a transparent attempt to create controversy where none exists.

B.  **Plaintiffs' Own Disclosures Do Not Meet Plaintiffs' Proposed Standards.**

As discussed above, Defendants have not run afoul of their requirements under Federal Rule 26(a)(1). Moreover, the instant Motion reveals Plaintiffs' own insincere approach to disclosures. Indeed, if the parties were obligated to disclose all information that could be deemed relevant by the other party, Plaintiffs would be facing severe sanctions of their own.

Plaintiffs' Second Amended Complaint charges Defendants with intentionally causing Plaintiff Dennis Montgomery emotional distress and physical harm. "Certainly inducing the Montgomerys to default on their loan obligations…, Bank of America acted outrageously, intentionally, recklessly or at a minimum negligently which caused severe emotional distress for the Montgomerys, which ultimately physically manifested itself in Mr. Montgomery's diagnosed brain aneurysm." Second Am. Compl. 9.3. Defendants do not concede the scientific soundness of Plaintiffs' position that emotional distress can physically manifest itself as a brain aneurysm. However, even if Plaintiffs' position were accepted, there have been many undisclosed events in the life of Dennis Montgomery that were arguably far more stressful than having his vacation home foreclosed mid-bankruptcy.

First, as alleged in the separate lawsuit filed by Flynn against Plaintiff Dennis Montgomery on September 28, 2009, Dennis Montgomery is a "pathological liar" who perpetrated a hoax on the federal government. Downs Decl., Ex. D (Complaint in *Flynn v.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 7
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

*Montgomery,* C.D. California Bankruptcy Court Case No. 2:10-ap-01305-BB), ¶ 33. In particular, Flynn claims that in the 2000s Montgomery marketed software, created by Montgomery and owned by eTreppid, that purported to detect Al-Qaeda messages. *See Id.* ¶ 19. In November 2005 Montgomery was purportedly exposed "for fraudulent conduct involving fake testing procedures at eTreppid in a scheme to defraud the U.S. government." *Id.* ¶ 23.  Despite knowing the "technology" to be a fraud and notwithstanding the fact that Montgomery did not own the technology, Montgomery continued to obtain investors.  *Id.* ¶¶ 23-24.  Montgomery also purportedly tricked Flynn with his fraud:  "On January 23, 2006, plaintiff met and spoke with Montgomery for the first time. Shortly thereafter, Montgomery retained plaintiff. For the ensuing 18 months, Montgomery spun the same web of lies and fraud to plaintiff that he spun to the United States government and to the courts." *Id.* ¶ 26.  In 2007 the FBI unsealed documents establishing that the technology was a hoax. *Id.* ¶ 20.  In addition to charging Montgomery with fraud, Flynn claimed that Montgomery had lied to a Nevada Federal Court in an attempt to conceal monies paid to Montgomery.  *Id.* ¶ 12.

Though Flynn's complaint against Montgomery was later dismissed, Flynn is hardly the only person to accuse Montgomery of swindling the U.S. government.  In its January/February 2010 issue, *Playboy Magazine* labeled Montgomery "The Man Who Conned the Pentagon" with an article claiming that Montgomery had not only peddled a fake software program to the U.S. Military and CIA, but that his bogus intel had caused the Department of Defense to go to Code Orange in December 2003, putting the whole country on alert and causing the cancellation of dozens of international flights. Downs Decl., Ex. E ("The Man Who Conned the Pentagon") at 1.  The article describes a scam involving billionaire investors, lobbyists and politicians that helped bring the technology to the attention of top White House aides. *Id.* at 6-9.  It was these connections, along with phony demonstrations, that helped Montgomery convince the CIA, Air Force and Navy that his software could detect Al-Qaeda transmissions during Al-Jazeera broadcasts. *Id.* at 6.  "The

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 8
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

company eventually got a contract with the Air Force dealing with aspects of video shot by unmanned Predator drones. Montgomery claimed his software could automatically recognize weapons and faces. In 2004, the U.S. Special Operations Command gave eTreppid a $30 million no-bid contract for 'compression' and 'automatic target recognition.'" *Id.* at 5.

The exact amount paid by the federal government for the technology is unknown, although Montgomery claimed to have been paid $30 million in contracts with another $100 million in Defense appropriations. *Id.* at 8. Montgomery and his partner, Warren Trepp, had a falling out in January 2006 over Montgomery's share of the government contract proceeds. *Id.* at 7. "When he left, according to eTreppid, the company's software had been deleted and the source code wiped out." *Id.* Trepp immediately called the FBI, advising that classified tapes had gone missing and causing Montgomery to lose his security clearance. *Id.* Trepp also sued Montgomery and his new billionaire investor, and was awarded $26.5 million. *Id.* at 9-10.

Montgomery's former employee described him as an erratic man who was prone to temper tantrums (he once threw a steak at a waitress), but who could also be warm and confiding. *Id.* at 5. The same employee recounted a bizarre tale wherein Montgomery claimed to have been abducted by aliens: "a spaceship descended on him. They wanted him to go with them, and he was abducted. Then he came back with extra knowledge." *Id.* Montgomery also had a devastating gambling habit, losing "$422,000 in one day." *Id.* at 9. As Flynn pointed out, Montgomery was indicted in 2009 in Nevada for criminal fraud in connection with obtaining credit from casinos and cashing bad checks. Downs Decl., Ex. D ¶17. "Montgomery came up with $250,000 in restitution, which kept him from being prosecuted." Downs Decl., Ex. E at 10.[3]

---

[3] Since 2009, many articles have been published about Dennis Montgomery and his alleged exploits. See Downs Decl., Ex. F (Dennis Montgomery Wikipedia page). A 2011 New York Times piece argues that Montgomery is a free man today because the federal government was embarrassed and wanted to hide the incident from the public. Downs Decl., Ex. G. Just last month, James Risen featured Dennis Montgomery in his book "Pay Any Price: Greed, Power, and Endless War."

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 9
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

In their own initial disclosures, Plaintiffs asserted that they were providing all relevant document categories. Downs Decl., Ex. H at 8. Yet the disclosures reveal none of the above events. *Id.* Certainly in a litigation where the Plaintiff has claimed that stress caused him to suffer a brain aneurysm, facts that during the same time period the Plaintiff was: publically exposed as a defrauder of the federal government and compulsive gambler; indicted for passing bad checks; and declared a "pathological liar" by his former lawyer and co-Plaintiff, would qualify as "relevant." Thus, despite demanding that Defendants fulfill obligations outside the scope of Rule 26, Plaintiffs do not hold themselves to the same disclosure standards. For this reason, as well, Plaintiffs' Motion should be denied.

**C.     The Sanctions Demanded by Plaintiffs are Unwarranted.**

Here, Plaintiffs' Motion demands extreme sanctions in the form of: (a) "Evidentiary exclusion of any Bank of America witness contesting liability in this case." (b) Prohibition on "Defendants examining Plaintiffs' witnesses on rebuttal or cross-examination after Plaintiffs' examination of its witnesses who dealt with Bank of America employees. This sanction should apply to both trial and/or depositions." (c) Preclude Defendants from filing a motion for summary judgment. Motion at 9-10. Plaintiffs attempt to justify the sanctions by claiming that Defendants tried to "hide the ball" by not disclosing the names and phone numbers of witnesses and that Defendants actively tried to conceal the existence of other lawsuits. *Id.* Even if a violation occurred—which one did not—the sanctions sought are wildly disproportionate given the procedural posture.

If imposition of a sanction would effectively constitute dismissal of a claim, the court must consider (1) whether the party's noncompliance involves willfulness or bad faith, as well as (2) the availability of lesser sanctions. *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012). Dismissal, striking pleadings, default judgment, and similar dispositive sanctions are appropriate only in "extreme circumstances" and where the violation is "due to willfulness, bad faith, or fault of the party." *Obayashi Corp. v. Chartis Specialty Ins. Co.*, No.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 10
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

C11-962 TSZ., 2012 BL 204670 (W.D. Wash. 2012) (quoting *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)) (opinion attached as Downs Decl., Ex. I).

As explained above, Plaintiffs are not entitled to the sanctions sought. There is no prejudice—discovery does not close until September 2015. Plaintiffs have more than enough time to complete written discovery and depositions on the subjects they now claim to be central to their litigation. Moreover, Defendants' first initial disclosures were served in May 2013, and Plaintiffs waited over a year to challenge them. In that time, the disclosures have been twice supplemented. Defendants have also since produced documents to the Plaintiffs' requests. Thus, Defendants are moving to compel information and documents they already possess or could have obtained through the discovery avenues available to them. Finally, there is no suggestion whatsoever that Defendants acted in bad faith by not disclosing the names and the documents of which Plaintiffs now complain. As already explained, Defendants were not obligated to make initial disclosures per the standard Plaintiffs impose. Moreover, Defendants would have no reason to believe the requested disclosures were even relevant. As a reminder, this litigation rests largely on Plaintiffs' claim that their $2.28 million dollar loan financing their lavish vacation home should have been modified under the HAMP—an assertion that is downright absurd and vaguely offensive. To quote Tim Massad, the U.S. Treasury official who oversees HAMP: "We don't help people who have million-dollar mansions…We don't help people who have vacation homes."   Downs Decl., Ex. J.

## IV. CONCLUSION

Plaintiffs' use their Motion to Compel as a transparent attempt to avoid their own discovery obligations and as a disingenuous means of making headway on meritless claims. Defendants have fully complied with their duties under the Rule 26(a)(1). If the Court were to impose the standard proffered by Plaintiffs, such would suggest that Plaintiffs committed their own fatal omissions in their disclosures. Regardless, there is simply no justification for

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL AND FOR EVIDENTIARY SANCTIONS- 11
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

the extreme sanctions demanded by Plaintiffs.  For all these reasons, Plaintiffs' Motion to Compel and for Sanctions should be denied.

      Respectfully submitted this 24th day of November, 2014.

                              LANE POWELL, PC

                              By *s/ Jacob M. Downs*
                                  John S. Devlin, III, WSBA No. 23988
                                  devlinj@lanepowell.com
                                  Jacob M. Downs, WSBA No. 37982
                                  downsj@lanepowell.com
                                  1420 Fifth Avenue, Suite 4200
                                  Seattle, WA 98101-2338
                                  Telephone: (206) 223-7000
                                  Facsimile: (206) 223-7107
Attorneys for Defendants Bank of America, N.A., as successor by merger to Countrywide Bank, FSB and BAC Home Loans Servicing, LP; Countrywide Home Loans, Inc.; and Bank of America Corporation for itself and as successor by merger to Countrywide Financial Corporation

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR EVIDENTIARY SANCTIONS- 12
Case #2:13-cv-00360-RAJ

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November, 2014, I electronically filed the foregoing document: **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR EVIDENTIARY SANCTIONS** with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Paul E. Brain
Brain Law Firm PLLC
1119 Pacific Avenue, Suite 1200
Tacoma, WA 98402
pbrain@paulbrainlaw.com kmiddelton@paulbrainlaw.com jdavenport@paulbrainlaw.com
Attorneys for Plaintiffs Dennis and Brenda Montgomery

Michael J. Flynn, Plaintiff *pro se*

Steven J. Dixson
Jody M. McCormick
WITHERSPOON KELLEY
422 W. Riverside Ave., Suite 1100
Spokane, WA 99201-0300
sjd@witherspoonkelley.com
jmm@witherspoonkelley.com
Withdrawing Attorneys for Defendants

LANE POWELL, PC

By: *s/ Jacob M. Downs*
John S. Devlin, III, WSBA No. 23988
devlinj@lanepowell.com
Jacob M. Downs, WSBA No. 37982
downsj@lanepowell.com
1420 Fifth Avenue, Suite 4200
Seattle, WA 98101-2338
Telephone: (206) 223-7000
Facsimile: (206) 223-7107

Attorneys for Defendants Bank of America, N.A., as successor by merger to Countrywide Bank, FSB and BAC Home Loans Servicing, LP; Countrywide Home Loans, Inc.; and Bank of America Corporation for itself and as successor by merger to Countrywide Financial Corporation

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR EVIDENTIARY SANCTIONS- 13
Case #2:13-cv-00360-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107